**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0689n.06

**No. 11-3003**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

***Sep 27, 2011***

LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff-Appellee | ) |
| | ) |
| v. | ) |
| | ) |
| MOHAMMAD CHOWDHURY | ) |
| | ) |
| Defendant-Appellant | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

**O P I N I O N**

BEFORE: ROGERS and McKEAGUE, Circuit Judges; and DONALD, District Judge.[*]

**DONALD, District Judge.**

On August 25, 2008, Defendant Mohammad Chowdhury pled guilty to fraudulent use of unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2). On March 24, 2009, the district court sentenced Chowdhury to two (2) months' incarceration followed by two (2) years of supervised release and imposed restitution in the amount of $3,230.73. Chowdhury was taken into custody after committing multiple violations of his supervised release and failing to appear for the first setting of his supervised release revocation hearing. On December 13, 2010, the district court imposed a sentence of twelve (12) months' incarceration followed by two (2) years of supervised release—an upward variance of three (3) months from the Guidelines range. On appeal Chowdhury argues that

---

[*]The Honorable Bernice B. Donald, United States District Judge for the Western District of Tennessee, sitting by designation.

the district court's consideration of the timing of his immigration hearing in imposing his sentence was procedurally and/or substantively unreasonable and that an upward variance of three (3) months was substantively unreasonable. We AFFIRM the district court's sentence.

## BACKGROUND

Chowdhury, a citizen of Bangladesh, is in the United States on a student visa. (Pre-sentence Report, pg. 5.) On May 21, 2008, he was charged in a one-count information with fraudulent use of unauthorized access devices in violation of 18 U.S.C. § 1029(a)(2). (Information, R. 2.) Chowdhury entered into a plea agreement with the Government on August 25, 2008. (Plea Agreement, R. 20.) The plea agreement stipulated that in the summer of 2007, Chowdhury was employed at a convenience store in Dade County, Florida, where he obtained copies of approximately twenty (20) customers' names and credit card information without authorization. (*Id.*) Chowdhury later used this information to place funds on his student debit card at Bowling Green State University ("BGSU") in Bowling Green, Ohio. (*Id.*) In August 2007, utilizing eleven (11) of the unauthorized credit cards, Chowdhury attempted to put over $27,000 on his student debit card, of which approximately $11,000 was approved. (*Id.*) Chowdhury also purchased items on campus for other students after posting on Facebook that he could make such purchases at a 20% discount in exchange for cash. (*Id.*)

The court accepted Chowdhury's guilty plea on September 11, 2008, and conducted a sentencing hearing on January 13, 2009. (Order Adopting Report and Recommendation, R. 23; Transcript of Sentencing Hearing, R. 40.) During the hearing, the court expressed concern that Chowdhury was "continuing to be deceitful" by not telling the people in his life about his legal

problems. (Transcript of Sentencing Hearing, R. 40, 4-5.) Nonetheless, the court agreed to consider a probationary sentence upon confirmation that Chowdhury had spoken to his father, the Chairman of BGSU, and his future fiancée. (*Id.*) Defense counsel responded that Chowdhury's father suffered from a heart condition and that this news might further endanger his health. (*Id.* at 9-10.) Upon hearing this, Probation Officer Sizemore informed the court that Chowdhury had previously represented that it was his mother, not his father, who was in poor health. (*Id.* at 10.) The court then cautioned Chowdhury, "[I]f I think somebody is not being candid with me, it all goes out the window." (*Id.* at 11.)

The court postponed the sentencing hearing to provide time for Chowdhury to speak to the above-mentioned individuals and complete the academic year. (*Id.* at 5-6, 8.) At some point before the continuation of the sentencing hearing on March 24, 2009, the Government learned that Chowdhury had, in fact, been suspended from BGSU. (Transcript of Sentencing Hearing, R. 41 at 8-9.) Based on Chowdhury's failure to disclose his suspension at the first setting, the Government urged the court to impose a period of incarceration within the Guidelines range. (*Id.* at 9.) In response, defense counsel argued for a period of probation so that Chowdhury could make "a more convincing argument to immigration that he deserve[d] a waiver of deportation." (*Id.* at 13.)

The court determined and the parties agreed that Chowdhury's Guidelines range was from six (6) to twelve (12) months. (*Id.* at 3-4.) The court then varied downward and imposed a sentence of two (2) months' incarceration followed by two (2) years of supervised release and imposed restitution in the amount of $3,230.73. (*Id.* at 25-26; Judgment R. 27.) In explaining the sentence, the court noted Chowdhury's failure to communicate his legal problems to the people in his life, the "deliberate[,] sequential[,] and intentional" nature of his conduct, and his lack of candor. (Transcript

3

of Sentencing Hearing, R. 41, 23-24.) Nonetheless, the court varied downward in light of "the potential immigration consequences" of a longer period of incarceration. (*Id.* at 25.) Finally, the court analyzed the 18 U.S.C. § 3553(a) factors and found that Chowdhury's offense was serious, that the sentence imposed would promote respect for the law, that the punishment was just, given the circumstances, and that the sentence would serve both as a deterrent and to protect the public. (*Id.* at 31-32.)

On November 9, 2010, following Chowdhury's release from custody, a Supervised Release Violation Report was filed alleging failure to report police contact, failure to report employment, failure to pay restitution, and a new violation of the law.[1](Violation Report, R. 44, 1.) Chowdhury failed to appear for his November 22, 2010 hearing on the Violation Report, and a warrant was issued for his arrest. (Warrant for Arrest, R. 46.) A Superseding Violation Report was filed on December 10, 2010, which added violations for failure to appear, traveling outside the judicial district without permission, and failure to report a new address. (Violation Report, R. 48, 1.) The U.S. Marshals took Chowdhury into custody in Zanesville, Ohio, which is located outside the Northern District. (Transcript of Supervised Release Revocation Hearing, R. 57, 2-3.)

The court conducted a supervised release revocation hearing on December 13, 2010, and found that Chowdhury violated his supervised release by failing to appear, traveling outside the judicial district, failing to report a new address, failing to pay restitution, and incurring new criminal charges for alleged fraudulent conduct. (Transcript of Supervised Release Revocation Hearing, R.

---

[1] On May 24, 2010, Chowdhury was charged with taking the identity of another and misuse of credit cards in Bowling Green Municipal Court. (Superseding Violation Report, R. 48, 1.) The Government informed the Court that this charge had been dismissed pending further investigation and that the Government intended to take over the investigation and make an independent assessment about whether to prosecute. (Transcript of Supervised Release Revocation Hearing, R. 57, 6, 15.)

57 at 16; Order, R. 49.) Based on these violations, the court revoked Chowdhury's supervised release, (Order, R. 49), and proceeded to hear from the parties regarding the appropriate sentence to impose in light of the Guidelines range, which was determined to be between three (3) and nine (9) months.

Defense counsel urged the court to impose a short period of incarceration and/or some type of electronic monitoring. (Transcript of Supervised Release Revocation Hearing, R. 57 at 16-19.) In support of this argument, defense counsel emphasized that Chowdhury had grown up in an underdeveloped country without adult male guidance and had not had the support of his family during the course of his criminal proceedings. (*Id.*) She also reminded the court that Chowdhury was facing a removal hearing to address his asylum claim, (*id.* at 7), and that "once a person has been incarcerated for [twelve] 12 months, then one is classified as an aggravated felon, and it becomes more and more difficult to stay in this country." (*Id.* at 18.) In response, the Government asked the court to "at minimum, give him the maximum guideline range" followed by supervised release. (*Id.* at 22.)

In response to these arguments, the court explained that it had "varied substantially" in imposing Chowdhury's original sentence "based on representations . . . which proved to be something less than entirely candid and truthful." (*Id.* at 24.) Thus, given Chowdhury's subsequent violations, the court was not inclined to impose a moderate sentence to decrease Chowdhury's chances of deportation. The court further commented to Chowdhury, "I want you incapacitated in the sense that you're not going to be able to flee again and avoid not only any sentence from this Court, but the potential consequences of an adverse–or the consequences of an adverse decision by

5

Immigration and Naturalization."[2]  (*Id.* at 25.)  The court expressed a willingness, however, to reconsider Chowdhury's sentence if defense counsel could move up the date of Chowdhury's removal hearing.  (*Id.*)

After evaluating the parties' arguments, the court imposed a sentence of twelve (12) months incarceration—an upward variance of three (3) months—followed by two (2) years of supervised release.  (*Id.* at 24, 26; Order R. 49.)  In justifying the variance, the court first noted that Chowdhury was under investigation for further fraudulent conduct, (at 22-23), and then remarked, "What troubles me most, quite candidly, is [your] not showing up a couple weeks ago."  (*Id.* at 23.)  The court further explained, "[Y]ou're 28 years old. You have not complied with the conditions of your supervised release, and your non-compliance is of a very serious sort."  (*Id.* at 24.)  Finally, the court stated that he did not think there was "much likelihood of rehabilitation from this sentence" and that its "purposes are principally to deter others."  (*Id.* at 25.)  In closing, the court asked the *Bostic*[3] question, whether either party had any objections to the sentence imposed, and Chowdhury raised no further objections.  (*Id.* at 26-27.)  Chowdhury filed a timely notice of appeal on December 21, 2010.  (Notice of Appeal, R. 53).

## ANALYSIS

"Post-*Booker*,[4] this Circuit [] review[s] supervised release revocation sentences in the same way that we review all other sentences—'under a deferential abuse-of-discretion standard' for

---

[2] Similarly, earlier in the proceedings, the court stated, "I'm less concerned about the period of detention than I am about the fact of detention.  He fled, clearly.  There's no question about that. . . . And I'm not about to let him out until the Immigration authorities decide what they want to do."  (*Id.* at 8.)

[3] *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004).

[4] *United States v. Booker*, 543 U.S. 220 (2005).

6

reasonableness," *United States v. Bolds*, 511 F.3d 568, 575 (6th Cir. 2007) (quoting *United States v. Lalonde*, 509 F.3d 750, 769 (6th Cir. 2007)). This inquiry consists of procedural and substantive components. *Id.* at 578 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). A sentence is procedurally unreasonable if the sentencing court (1) improperly calculated the Guidelines range, (2) failed to consider the 18 U.S.C. § 3553(a) factors and the parties' arguments for a sentence outside the Guidelines range, or (3) failed to adequately explain its reasons for rejecting the parties' arguments and/or deviating from the Guidelines range. *Bolds*, 511 F.3d at 579 (citing *Gall*, 552 U.S. at 51).

"In reviewing for substantive reasonableness, [the appellate court] must 'take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Bolds*, 511 F.3d at 581 (citing *Gall*, 552 U.S. at 51). While the court may apply a rebuttable presumption of reasonableness to sentences within the Guidelines range, it does not apply a presumption of unreasonableness to sentences outside the Guidelines range. *Gall*, 552 U.S. at 51. Rather, the court generally gives "due deference" to the sentencing court's determination that the § 3553(a) factors warranted imposition of the sentence. *Id.* Finally, although an appellate court might conclude that a different sentence was appropriate, such a conclusion does not justify reversal. *Id.*

## I. Consideration of an Impermissible Factor

Chowdhury argues that his sentence is "procedurally and/or substantively" unreasonable because the district court considered an allegedly impermissible factor—his upcoming immigration hearing—in imposing his sentence. It is not clear whether a challenge based on the consideration of an impermissible factor involves procedural or substantive reasonableness or both. *United States v. Recla*, 560 F.3d 539, 545 (6th Cir. 2009); *United States v. Malone*, 503 F.3d 481, 484 (6th Cir.

7

2007). Regardless of the precise nature of the challenge, this court reviews Chowdhury's sentence for reasonableness.[5] *Recla*, 560 F.3d at 545 (citing *Gall*, 552 U.S. at 51).

In *United States v. Petrus*, 588 F.3d 347, 356 (6th Cir. 2009), this court addressed whether the sentencing court had adequately explained its reasons for rejecting the defendant's mitigation argument that he was facing "severely adverse immigration status." After answering that question in the affirmative, this court stated that immigration status is a permissible consideration and may subject a defendant to an upward variance depending on the factual context:

> in the post-Booker era, the Defendant's immigration status could lead a sentencing court to two opposite conclusions, one being that potential deportation and fewer prison opportunities should be a reason for a downward variance. Conversely, the other conclusion could be that a person granted the benefit of entry to the country should be subject to an upward variance for abusing the privilege. In different factual contexts, either approach is within the discretion of the sentencing court.

*Id.*

In our view, the factual context of this case warranted the district court's consideration of the timing of Chowdhury's removal hearing. The district court imposed a period of incarceration that would extend beyond the date of the removal hearing for the express reason of preventing Chowdhury from fleeing to avoid an adverse ruling by the immigration authorities. The district court's concern was warranted in light of the fact that Chowdhury had fled previously to avoid his

---

[5] Where, as here, the district court asks for objections after imposing the sentence, and the defendant fails to object, arguments relating to the procedural reasonableness of the sentence are reviewed for plain error. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (citing *Bostic*, 371 F.3d at 872-73). "Under this standard, a defendant must demonstrate that the district court's error was obvious or clear, affected his substantial rights, and affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Harmon*, 607 F.3d 233, 238 (6th Cir. 2010) (citing *United States v. Houston*, 529 F.3d 743, 750 (6th Cir. 2008)). We need not determine here whether the consideration of an impermissible factor involves procedural or substantive reasonableness for purposes of applying plain-error review because, as discussed *infra*, this challenge fails under the less deferential abuse-of-discretion standard. *See United States v. Brooks*, 628 F.3d 791, 797 (6th Cir. 2011).

supervised release revocation hearing and had shown no signs of returning on his own volition. Chowdhury was also under investigation for further fraudulent conduct and had repeatedly demonstrated a lack of candor and forthrightness with the court as well as the U.S. Pretrial and Probation Office. In short, the district court had ample reason to believe that a period of incarceration was a necessary means of ensuring Chowdhury's appearance at his upcoming hearing. Therefore, the district court's consideration of the timing of Chowdhury's removal hearing was within the court's discretion and the sentence imposed was reasonable.[6]

## II. Substantive Error

The district court imposed a lenient sentence of two (2) months' incarceration followed by two (2) years of supervised release upon Chowdhury's original guilty plea—a four (4) month downward departure. Chowdhury thereafter violated several conditions of his supervised release—including a new charge for fraudulent conduct—fled to another district, and failed to appear at his first supervised release revocation hearing. In light of these facts and the § 3553(a) factors considered by the district court in sentencing, the length of Chowdhury's sentence—twelve (12) months of incarceration, representing a three (3) month upward variance—is not substantively unreasonable. *See, e.g., United States v. Johnson*, No. 09-4293, 2011 WL 1775383 (6th Cir. May 11, 2011) (affirming imposition of a fifteen (15) month upward departure upon a revocation of supervised release following violent crime convictions and possession of a firearm); *United States v. Brown*, 501 F.3d 722, 726 (6th Cir. 2007) (affirming imposition of a ten (10) months upward

---

[6] The district court's consideration of the timing of Chowdhury's removal hearing is the only basis on which Chowdhury is challenging the procedural reasonableness of his sentence. We have determined, nonetheless, that the district court did not commit any other procedural errors; it correctly calculated the Guidelines range, heard arguments from both parties, considered the § 3553(a) factors, and adequately explained its reasoning. *See Gall*, 552 U.S. at 53.

departure upon revocation of supervised release following multiple drug and alcohol-related violations).

Chowdhury's further involvement in fraudulent conduct and failure to appear at his supervised release revocation hearing were serious violations of the trust that the district court had placed in him when it imposed the original sentence. *See Johnson*, 2011 WL 1775383, at \*10. Indeed, the relevant policy statement at Application Note 4 of the U.S. Sentencing Guidelines Manual (U.S.S.G.) § 7B1.4 (2009), endorses departing upward upon a violation of supervised release in light of a downward departure at the original sentencing. *See id.* When conducting a review for substantive reasonableness, this court "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justified the extent of the variance." *Gall*, 552 U.S. at 51. Considering the "totality of the circumstances," including the three (3) month upward variance, the district court did not abuse its discretion in sentencing Chowdhury to twelve (12) months' incarceration followed by two (2) years of supervised release. *Bolds*, 511 F.3d at 581.

**CONCLUSION**

For the foregoing reasons, the district court's judgment is AFFIRMED.