RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0404p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

     *Plaintiff-Appellee,*

  *v.*

WASEM PETRUS,

     *Defendant-Appellant.*

No. 08-1706

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-20361-001—Victoria A. Roberts, District Judge.

Argued:  July 28, 2009

Decided and Filed:  November 23, 2009

Before:  GILMAN and McKEAGUE, Circuit Judges; SARGUS, District Judge.[*]

_____

## COUNSEL

**ARGUED:**  Mark J. Kriger, LaRENE & KRIGER, P.L.C., Detroit, Michigan, for Appellant. Jennifer J. Sinclair, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.  **ON BRIEF:**  N. C. Deday LaRene, LaRENE & KRIGER, P.L.C., Detroit, Michigan, for Appellant.  Jennifer J. Sinclair, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

  SARGUS, D. J., delivered the opinion of the court, in which McKEAGUE, J., joined.  GILMAN, J. (pp. 14-17), delivered a separate dissenting opinion.

_____

## OPINION

_____

  EDMUND A. SARGUS, JR., District Judge.   Defendant-Appellant Wasem Petrus ("Defendant") challenges the 70-month sentenced imposed by the district court

_____

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

following his guilty plea to a charge of conspiring to possess with intent to distribute and to distribute methylenedioxymethamphetamine ("MDMA"). Defendant contends that his sentence is procedurally unreasonable because the district judge failed to adequately explain her apparent rejection of Defendant's arguments for leniency, failed to adequately explain how she selected the sentence imposed, and failed to give proper weight to facts and circumstances suggesting a lesser penalty. For the reasons that follow, we hereby **AFFIRM** the sentence imposed by the district court.

## I. BACKGROUND

Defendant was charged in a one-count indictment returned July 20, 2007 in the U.S. District Court for the Eastern District of Michigan for conspiring to possess with intent to distribute and distribute MDMA in violation of 21 U.S.C. §§ 841(a)(1) and 846. Defendant pleaded guilty to the charge on November 13, 2007, and a sentencing hearing was held on May 20, 2008.

At the sentencing hearing, Defendant's counsel urged the district court to consider the fact that Defendant had been born in Iraq and that his family fled as refugees when Defendant was a young child. According to Defendant's counsel, due to his parents' poor health, Defendant has "been the man of his family" since a very young age, having dropped out of school after the tenth grade to help support his family. (Sentencing Tr. at 4.) Defendant's counsel asked the Court to "take into account [Defendant's] personal circumstances, including the fact that he takes care of his family." (*Id.* at 6.) He pointed out that Defendant is "not a person [who has] supported himself as a drug dealer" or who has "ever been successful as a drug dealer," but rather "took advantage of an economic opportunity" presented by a coworker. (*Id.* at 6.)

In his sentencing memorandum, Defendant also asserted that "[his] family was forced to flee Iraq. He has no family there and there is no society or government which will embrace him or protect him." (Def.'s Sentencing Mem., ROA V.1 at 16.) Defendant contended that "[t]he profound immigration consequences he faces take his

case very far from the heartland of cases anticipated by the . . . Guidelines and warrant a sentence greatly below the recommended sentence." (*Id.* at 16.)

Counsel also suggested that, due to Defendant's non-citizen status, his conviction may subject him to possible deportation to Iraq, "a war zone" and "someplace that is [no longer the] country his family had to flee as refugees." (Sentencing Tr. 7.) Counsel for the government responded that the government currently is "not deporting to Iraq . . . and probably won't for some years in the future." (*Id.* at 8.)

After listening to the above statements, the district court calculated the applicable Guideline range to be 70–87 months based on an Offense Level of 27 and Criminal History Category of one. The court listed several factors under 18 U.S.C. § 3553(a) to which Defendant's counsel had directed the court: Defendant's background as an Iraqi refugee, the fact that he dropped out of school and has worked since a young age to care for disabled parents, the fact that Defendant's legal problems stem from relationships developed while he was working, his recent marriage, and the risk of "severely adverse immigration action." (Sentencing Tr. 10.) The court then listed the general statutory factors under § 3553(a) and acknowledged that the court must also "consider the kinds of sentences available, the Guideline range, the Guidelines generally, the need to avoid unwarranted . . . disparities . . . and the need to . . . provide restitution to victims." (*Id.* at 10.)

The court stated that as it "consider[s] generally those factors or those facts about [Defendant's] life that he wishes the Court to take into account, the Court also takes into account that in arriving at these Guidelines, [Defendant's] lack of criminal history was taken into account because he received the benefit of a reduction under what we call the safety valve." (Sentencing Tr. 11.) The court noted that it had also considered the fact that Defendant was involved in a "very serious offense" and that credible evidence documented his role as a distributor. (*Id.* at 11.) The relevant conduct attributed to Defendant included 8,125 MDMA pills, equivalent under Sentencing Guideline 2D1.1(c) to over one million kilograms of marijuana.

The court acknowledged that an otherwise similar offender in the conspiracy, Jeny Maqi, had received an "extremely lenient" sentence partly due to the "vast" extent of her cooperation with the government and the "extraordinary and exceptional" amount of information she had provided. (Sentencing Tr. 11.) The court stated that it understood Defendant's assertion that "by the time [Defendant] came in there wasn't any information that he had to provide," noted that the court did not know whether this was true, but found a "vast distinction between [Defendant] and Miss [Maqi] because of the nature of her cooperation." (*Id.* at 11.)

The court stated that it "certainly is mindful" that it could consider Defendant's immigration status. (Sentencing Tr. 12.) The district court then sentenced Defendant to serve a term of 70 months in custody followed by three years of supervised release.

On May 29, 2008, Defendant filed this timely appeal.

## II.     STANDARD OF REVIEW

We review a district court's sentencing determination for reasonableness under a "deferential abuse-of-discretion standard." *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (quoting *Gall v. United States*, 128 S. Ct. 586, 591 (2007); *Rita v. United States*, 127 S. Ct. 2456, 2459 (2007); *United States v. Booker*, 543 U.S. 220, 260–61 (2005)). This standard has two components: procedural and substantive. *Id.*, 511 F.3d at 578 (citing *Gall*, 128 S. Ct. at 597).

### A.     *Procedural Reasonableness Review*

Our procedural reasonableness review consists of three steps. We must ensure that the district court (1) properly calculated the applicable advisory Guidelines range; (2) considered the § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the chosen sentence, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range. *Bolds*, 511 F.3d at 581.

"First, we must ensure that the district court 'correctly calculat[ed] the applicable Guidelines range' which are 'the starting point and initial benchmark' of its sentencing analysis." *Bolds*, 511 F.3d at 579 (quoting *Gall*, 128 S. Ct. at 591). In reviewing the district court's calculation of the Guidelines, we still review the district court's factual findings for clear error and its legal conclusions de novo. *Id.*, 511 F.3d at 579 (citing *United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007)).

Second, we must ensure that the district judge gave both parties an opportunity "'to argue for whatever sentence they deem appropriate' and then 'considered all of the § 3553(a) factors to determine whether they support the sentence requested by [each] party.'" *Bolds*, 511 F.3d at 579–80 (quoting *Gall*, 128 S. Ct. at 596). "In evaluating the parties' arguments, the sentencing judge 'may not presume that the Guidelines range is reasonable,'" but rather "'must make an individualized assessment based on the facts presented' and upon a thorough consideration of all of the § 3553(a) factors." *Id.*, 511 F.3d at 580 (quoting *Gall*, 128 S. Ct. at 596–97; *Rita*, 127 S. Ct. at 2465).

Finally, we must "ensure that the district court has 'adequately explain[ed] the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *Bolds*, 511 F.3d at 580 (quoting *Gall*, 128 S. Ct. at 597). "Reversible procedural error occurs if the sentencing judge fails to 'set forth enough [of a statement of reasons] to satisfy the appellate court that he has considered the parties' arguments and has a *reasoned* basis for exercising his own legal decision making authority.'" *Id.*, 511 F.3d at 580 (emphasis added) (quoting *Rita*, 127 S. Ct. at 2468).

It is "not incumbent on the District Judge to raise every conceivably relevant issue on his own initiative." *Gall*, 128 S. Ct. at 599. However, if a defendant raises a particular argument in support of a lower sentence, the record must reflect that the district judge both considered the defendant's argument and explained the basis for rejecting it. *Bolds*, 511 F.3d at 580 (citing *United States v. Jones*, 489 F.3d 243, 251 (6th Cir. 2007)). *See also Rita*, 127 S. Ct. at 2468 ("Where the defendant . . . presents nonfrivolous reasons for imposing a different sentence . . . the judge will normally go

further and explain why he has rejected those arguments.  Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation.").

We have held that "a district court's failure to address each argument [of the defendant] head-on will not lead to automatic vacatur" if the context and the record make the court's reasoning clear.  *United States v. Smith*, 505 F.3d 463, 468 (6th Cir. 2007) (quoting *United States v. Liou*, 491 F.3d 334, 339 n.4 (6th Cir. 2007)).  See also *United States v. Duane*, 533 F.3d 441, 452 (6th Cir. 2008); *Vonner*, 516 F.3d at 386, 387; *United States v. Keller*, 498 F.3d 316, 327–28 (6th Cir. 2007).  In this Court's recent unpublished decision in *United States v. Herrod*, No. 07-2197, 2009 U.S. App. Lexis 18763, *14–28 (6th Cir. 2009), Judge Clay wrote separately "to emphasize that sentencing judges are responsible for providing an adequate record for appeal."  He noted:

> Our case law imposes this obligation on district courts for reasons of fairness and practicality.  From every perspective, it is preferable for district courts to explicitly address every nonfrivolous argument raised by a defendant.  Expressly articulating the grounds for rejecting the particular claims raised by a defendant, at least with respect to a defendant's nonfrivolous arguments, promotes several critical goals: (1) it provides the defendant with a clear understanding of the basis for his or her sentence; (2) it allows the public to understand the rationale underlying the chosen sentence; and (3) it helps this Court avoid the difficulties of parsing the sentencing transcript when determining whether the district court in fact considered the defendant's arguments.  In fact, if district courts fully complied with this obligation, many frivolous appeals and clarification remands could be avoided.

*Herrod*, 2009 U.S. App. Lexis 18763 at *14 (Clay, J., concurring).  We agree with Judge Clay that "the better practice . . . is for the district court to explicitly address all of the nonfrivolous arguments that a defendant raises in support of a lower sentence."  *Id.*, 2009 U.S. App. Lexis 18763 at *22–23 (Clay, J., concurring).

The record also "must contain the district court's rationale for concluding that the sentence imposed is 'sufficient but not greater than necessary, to comply with the purposes' of sentencing set forth in 18 U.S.C. § 3553(a)."  *Bolds*, 511 F.3d at 580.

While the district court need not "engage in a 'ritualistic incantation to establish consideration of a legal issue'" or "make specific findings related to each of the factors considered," the district court must articulate the reasons it reached the sentenced imposed. *Id.*, 511 F.3d at 580 (citing *United States v. McClellan*, 164 F.3d 308, 310 (1999); *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005)). It is insufficient simply to list the § 3553(a) factors and the defendant's various characteristics. *Id.*, 511 F.3d at 580 (citing *United States v. Cousins*, 469 F.3d 572, 577 (6th Cir. 2006)). Rather, "[t]he district court must provide a clear explanation of why it has either accepted or rejected the parties' arguments and thereby chosen the particular sentence imposed, regardless of whether it is within or outside of the Guidelines." *Id.*, 511 F.3d at 580 (citing *Gall*, 128 S. Ct. at 597).

**B.    *Substantive Reasonableness Review***

If we have found the district court's sentencing decision to be procedurally sound, we must "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Bolds*, 511 F.3d at 581 (quoting *Gall*, 128 S. Ct. at 597). In reviewing for substantive reasonableness, we must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.*, 511 F.3d at 581 (quoting *Gall*, 128 S. Ct. at 597). For sentences within the Guidelines, we may apply a rebuttable presumption of substantive reasonableness. *Id.*, 511 F.3d at 581 (citing *Gall*, 128 S. Ct. at 597; *Rita*, 127 S. Ct. at 2456; *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006)). We may not, however, apply a presumption of unreasonableness to outside-Guidelines sentences. *Id.*, 511 F.3d at 581 (citing *Gall*, 128 S. Ct. at 597). In general, we must give "due deference" to the district court's conclusion that the sentence imposed is warranted by the § 3553(a) factors. *Id.*, 511 F.3d at 581 (citing *Gall*, 128 S. Ct. at 597). "The fact that [we] might have reasonably concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.*, 511 F.3d at 581 (quoting *Gall*, 128 S. Ct. at 597).

**III.    *DISCUSSION***

**A.      *Procedural Reasonableness***

Defendant contends that his 70-month sentence is procedurally unreasonable because the district judge "failed to adequately explain her apparent rejection of the defendant's arguments for leniency," or to explain "how she selected the sentence which she did," and because the judge "failed to give proper weight to facts and circumstances suggesting a lesser penalty." (Def.'s Br. 3.)

As discussed above, we review the district court's decision for procedural reasonableness in three steps, ensuring that the district court: (1) properly calculated the Guidelines range; (2) considered the other § 3553(a) factors and the parties' arguments; and (3) adequately articulated its reasoning for imposing the chosen sentence, including any rejection of the parties' arguments. *Bolds*, 511 F.3d at 581. We find that the district court satisfied these requirements.

First, Defendant does not dispute that the district court properly calculated the applicable advisory Guidelines range to be 70–87 months based on an Offense Level of 27 and Criminal History Category of I.

Second, the record shows that the district court gave both parties "the opportunity to argue for whatever sentence they deem appropriate" and made an individualized assessment based on the facts and upon a thorough consideration of all of the § 3553(a) factors. It is undisputed, and the sentencing hearing transcript shows, that the court provided an opportunity for Defendant and the government to speak in support of whatever sentence they deemed appropriate. The record also shows that the district court made an individualized assessment based upon all of the § 3553(a) factors as well as those facts and circumstances brought to light by the parties.

Before announcing the sentence, the court listed both the general § 3553(a) factors and the considerations discussed by Defendant's counsel. The court noted that as it considered all of those factors, it also considered the serious nature of Defendant's offense and the fact that Defendant's lack of a criminal history was taken into account

under the "safety valve" of 18 U.S.C. § 3553(f).  The court acknowledged that Defendant faced potential deportation as a result of the conviction.  The court also explained why it imposed a harsher sentence on Defendant than that imposed on a co-conspirator who had provided the government with an "extraordinary and exceptional" amount of information.

Finally, we find that the district court adequately explained the sentence imposed, and that the court "considered the parties' arguments and has a reasoned basis" for selecting the sentence imposed.  The record reflects that the district court considered Defendant's arguments and explained the basis for rejecting them, as described above.

Defendant contends that "the record does not tell us" "[w]hat impact . . . the defense arguments regarding the hardships of [Defendant's] life, his service to his family, the burden of his deportability, or the harshness of the Guidelines' treatment of his situational wrongdoing [had] on [the court's] thinking."  (Def.'s Br. 23.)  Having acknowledged the parties' arguments and articulated its reasons for imposing a particular sentence, however, the district court was not obligated to discuss extensively each consideration.

In a recent case, we found that "[a]lthough the district judge did not articulate his reasons for rejecting [the defendant's] arguments, his reasoning was 'sufficiently detailed to reflect the considerations listed in § 3553(a) and to allow for meaningful appellate review.'"  *United States v. Lapsins*, 570 F.3d 758, 773 (6th Cir. 2009) (applying the *plain error* rule under *Bostic*, 371 F.3d 865) (quoting *United States v. Mayberry*, 540 F.3d 506, 518 (6th Cir. 2008)).  Noting that "[t]he district court is not required to 'give the reasons for rejecting any and all arguments [made] by the parties for alternative sentences,'" we held that "[i]t is sufficient if the district judge 'set[s] forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'"  *Id.*, 570 F.3d at 773 (citing *Vonner*, 516 F.3d at 387; *Rita*, 551 U.S. at 356; *United States v. Moon*, 513 F.3d 527, 539 (6th Cir. 2008); *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006)).  This Court explained that "[a] less lengthy explanation will suffice for a

within-Guidelines sentence when 'the record makes clear that the sentencing judge considered the [defendant's] evidence and arguments.'" *Id.*, 570 F.3d at 774 (citing *Rita*, 551 U.S. at 359). We noted that "[a]lthough the district court did not specifically respond to [the defendant's] arguments about his remorse, family support, substance abuse problems, and willingness to undergo counseling, these matters are encompassed within § 3553(a)(1)," which the district court stated that it had considered. *Id.*, 570 F.3d at 774.

Here, as in *Lapsins*, the district court might have said more during the sentencing hearing. The best practice, as Judge Clay has said, "is for the district court to explicitly address all of the nonfrivolous arguments that a defendant raises in support of a lower sentence." *Herrod*, 2009 U.S. App. Lexis 18763 at *22–23 (Clay, J., concurring). In this case, however, the district court's brevity does not constitute reversible error. The court explained its decision by discussing the considerations the court considered most important. As the Supreme Court has held:

> We acknowledge that the judge might have said more. [She] might have added explicitly that [she] had heard and considered the evidence and argument; that (as no one before [the court] denied) [she] thought the Commission in the Guidelines had determined a sentence that was proper in the mine run of roughly similar . . . cases; and that [she] found that [the defendant's] personal circumstances here were simply not different enough to warrant a different sentence. But context and the record make clear that this, or similar, reasoning underlies the judge's conclusion. Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively.

*Rita v. United States*, 551 U.S. 338, 359 (2007).

The dissent maintains that the district court did not adequately explain its reasons in rejecting the arguments advanced by Defendant in favor of mitigation. The first position advanced by Petrus relates to his status as a non-citizen, lawfully in the country at the time of conviction. The second argument focused upon the much lower sentences given to co-conspirators and the court's refusal to find that Petrus rendered substantial

assistance to the government. While each of these arguments could have been addressed with more detailed rationales, the record discloses that the district court considered and rejected the Defendant's position.

As to his immigration status, the district court expressly acknowledged that Petrus faced "severely adverse immigration status," yet sentenced him at the low end of the sentencing guideline range. We agree with our dissenting colleague that the district court perhaps should have said more. It is worth noting, however, that in the post-Booker era, the Defendant's immigration status could lead a sentencing court to two opposite conclusions, one being that potential deportation and fewer prison opportunities should be a reason for a downward variance. Conversely, the other conclusion could be that a person granted the benefit of entry to the country should be subject to an upward variance for abusing the privilege. In different factual contexts, either approach is within the discretion of the sentencing court. In this case, the district court emphasized the serious nature of Petrus' conduct and did not find that his immigration status sufficiently mitigated his crime. The record discloses that the district court understood Petrus' argument, considered the merits, and rejected the position.

As to the sentences given to his co-conspirators, the record is clear that, unlike Petrus, each of the other defendants cooperated with the government and received the benefit of a motion for a downward departure under U.S.S.G. § 5K1.1. Co-conspirator Jeny Maqi faced a sentencing guideline range of 121-151 months. The district court granted the 5K1.1 motion and did not impose incarceration, given her "extraordinary and exceptional" amount of assistance to the government.

The dissent states that Petrus "was willing and able to co-operate with the government" but, because he waited until all others had rendered assistance, he was denied a 5K1.1 motion. As to the sentencing guidelines, this Court is without authority to review a decision by the government not to file a 5K1.1 motion, unless a defendant alleges and supports a claim that the refusal to file was based upon an unconstitutional, prosecutive motive. *Wade v. United States*, 112 S. Ct. 1840, 1844 (1992); *United States v. Blue*, 557 F.3d 682 (6th Cir. 2009). A district court may, in its discretion, consider

whether a defendant's cooperation should be considered under 18 U.S.C. § 3553(a). *Blue*, at 686. Thus, whether to treat Petrus' alleged willingness to cooperate as a 3553(a) mitigating factor is a decision subject to the discretion of the sentencing court. A defendant who offers to cooperate only after all other co-conspirators have rendered assistance to the government gives little value to prosecutors. While the fact that the defendant may have been willing to cooperate may seem significant, the cooperation was apparently offered only after Petrus knew his co-conspirators had rendered assistance to the government. Offering to tell the government what it already knows and can prove is not substantial assistance. Morever, the first person to cooperate often incurs significant risk of retaliation, which is not the case for a person coming in at the end.

The dissent is certainly correct that a district court should articulate its reasoning in rejecting a defendant's argument in favor of mitigation. Here, the district judge addressed every position advanced by the Defendant, albeit in a bare-bone fashion. In sum, although the district court in this case "might have said more," *Rita*, 551 U.S. at 359, the law does not require it. We find that the court did not commit any significant procedural error in imposing Defendant's sentence and that the sentence was procedurally reasonable.

**B.**    ***Substantive Reasonableness***

Although Defendant does not appear to appeal his sentence on the basis of substantive reasonableness, he raises the issue tangentially by contending that "the district judge . . . failed to give proper weight to facts and circumstances suggesting a lesser penalty." (Def.'s Br. 3.) Defendant "continues to maintain" that his sentence is substantively unreasonable, asserting that the court's approach to sentencing was "overly tethered to the Guidelines . . . and inconsistent with proper post-*Booker* methodology." (Def.'s Br. 27, 34.)

Defendant asserts that his arguments "are framed in terms of procedural 'reasonableness' because procedural sufficiency in the sentencing decision—including a sufficient record to permit substantive evaluation—is a necessary precondition to substantive review." (Def.'s Br. 32–33; *see also* Def.'s Reply Br. 2 (noting that the

presumption of reasonableness applies only to substantive review, and "it is to the procedural 'unreasonableness' of the trial judge's sentencing decision that defendant-appellant's arguments are addressed").)

Because Defendant raises the issue of substantive reasonableness, albeit indirectly, this Court should address it. To the extent that Defendant contends that his sentence is substantively unreasonable, we disagree. Because Defendant's sentence is within the Guidelines, it is entitled to a rebuttable presumption of substantive reasonableness, and we give due deference to the district court's conclusion that the sentence is warranted by the § 3553(a) factors. *Bolds*, 511 F.3d at 581 (citing *Gall*, 128 S. Ct. at 597). Considering the totality of the circumstances, *id.*, including the Guidelines, the § 3553(a) factors, the nature of the offense, Defendant's family situation, his immigration status, Defendant's lack of a criminal history, and his asserted attempt to cooperate with the government; we find that the 70-month sentence is substantively reasonable.

## IV.  *CONCLUSION*

For the foregoing reasons, the sentence imposed by the district court is hereby **AFFIRMED**.

---

**DISSENT**

---

RONALD LEE GILMAN, Circuit Judge, dissenting. I do not disagree with the majority's conclusion that the sentence imposed on Wasem Petrus was substantively reasonable. Nor do I disagree with the majority's analysis of the first two factors of the procedural-reasonableness test (properly calculating the United States Sentencing Guidelines range, and considering both 18 U.S.C. § 3553(a) and the parties' arguments). *See United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). I part ways with the majority, however, regarding its treatment of the third factor of this test (articulating the reasons for imposing the chosen sentence). *See id.* Because the district court did not adequately explain why it rejected certain arguments made by Petrus for a sentence below the Guidelines range, I respectfully dissent.

This court declared in *Bolds* that the third consideration in reviewing the procedural reasonableness of a sentence is whether the district court "adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range." *Id.* Although this standard does not require the district court to engage in a "ritualistic incantation to establish consideration of a legal issue," it does require the court to "provide a clear explanation of why it has either accepted or rejected the parties' arguments and thereby chosen the particular sentence imposed, regardless of whether it is within or outside of the Guidelines." *Id.* at 580 (citations and internal quotation marks omitted). This means that "[w]hen a defendant raises a particular argument in seeking a lower sentence, the record must reflect *both* that the district judge *considered* the defendant's argument and that the judge *explained* the basis for rejecting it." *Id.* (emphasis added) (citation and internal quotation marks omitted).

I agree with the majority that the district court *acknowledged* and *considered* Petrus's arguments regarding his family background and immigration status, but I find

nothing in the record to support the majority's statements that the district court either *articulated* or *explained* its basis for rejecting these arguments. (Maj. Op. at 9) Thus, although the majority acknowledges the wisdom of Judge Clay's admonition that "it is clear that the better practice—and the one required by our case law—is for the district court to explicitly address all of the nonfrivolous arguments that a defendant raises in support of a lower sentence," *United States v. Herrod*, No. 07-2197, 2009 WL 2514047, at *8 (6th Cir. Aug. 19, 2009) (unpublished) (Clay, J., concurring), the majority fails to apply this standard in the present case.

The district court offered no evaluation of Petrus's arguments concerning his family circumstances, and the entirety of the court's analysis of Petrus's arguments regarding his immigration status is as follows:

> In deciding what sentence to impose, the Court certainly is mindful that it can take into account Mr. Petrus'[s] deportable status and the fact that he would not be entitled to receive all of the benefits of all of the programs that might be available to a citizen of the United States while housed in the Bureau of Prisons facility. So those are what—those are the considerations that the Court has in deciding the sentence to impose.

> Pursuant to the Sentencing Reform Act of 1984, the Court has considered the Guidelines and the factors in 18 U.S.C. 3553(a), the Defendant is committed to the custody of the Bureau of Prisons for a period of 70 months.

As this passage from the sentencing hearing demonstrates, the district court *acknowledged* Petrus's arguments concerning his immigration status and then, without *any explanation*, the court imposed a sentence of 70 months. Presumably the court rejected Petrus's arguments that he was an atypical defendant and that his crime did not fall in the heartland of cases anticipated by the Guidelines. But we are left to speculate as to how the court reached this determination. If we are to give any effect to the third prong of the procedural-reasonableness test, we must require more explanation than that which was offered in the present case. The district court's perfunctory recitation of the parties' arguments and the statutory sentencing factors does not constitute an adequate explanation of its sentencing decision.

This case in particular cries out for an explanation as to why Petrus received substantially disparate treatment in comparison to his coconspirators at sentencing. Jeny Maqi, for example, who was one of Petrus's coconspirators at the same level of culpability with a 121-to-151-month Guidelines range, avoided any incarceration whatsoever because of her extensive cooperation with the government. But Petrus was equally willing and able to cooperate with the government, yet he did not receive a U.S.S.G. § 5K1.1 substantial-assistance reduction simply because he lost the race to be the first to "spill the beans" to the United States Attorney. Fundamental fairness requires more of an explanation for this seemingly inequitable result than the district court's simple statement "that there is a vast distinction between Mr. Petrus and Miss [Maqi] because of the nature of her cooperation."

I acknowledge that there is selected caselaw in our circuit that supports the conclusion reached by the majority. These cases, however, appear to advocate the position of "do as I say, not as I do." On the one hand, the caselaw requires the sentencing court to "provide a clear explanation of why it has either accepted or rejected the parties' arguments." *Bolds*, 511 F.3d at 580. But our circuit has also determined, at least under plain-error review, that a sentence is procedurally reasonable even where "the district judge did not articulate his reasons for rejecting [the defendant's] arguments." *United States v. Lapsins*, 570 F.3d 758, 773 (6th Cir. 2009). In *Lapsins*, this court in fact concluded that a mere reference to 18 U.S.C. § 3553(a)(1), which requires a sentencing court to consider "the history and characteristics of the defendant," was sufficient to dispose of the explanation requirement. *Id.* at 774.

This contradiction between the articulation of the law and its actual application fails both to provide meaningful guidance to the district courts and to give notice to criminal defendants of their rights at sentencing. We should either require a clear explanation for the sentence imposed or declare that such an explanation is not necessary. Stating that we require an explanation and then failing to enforce the requirement does nothing but create confusion and uncertainty.

The governing law as set forth by this court in *Bolds*, and cited by the majority in the present case, is as follows:

> When a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it. Likewise, the record must contain the district court's rationale for concluding that the sentence imposed is sufficient but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a). While there is no requirement that the district court engage in a ritualistic incantation to establish consideration of a legal issue or that the court make specific findings related to each of the factors considered, the district court must nonetheless provide an articulation of the reasons the district court reached the sentenced imposed. Simply listing the § 3553(a) factors and various characteristics of the defendant without referring to the applicable Guidelines range or explaining the decision to stay within or deviate from that range is insufficient. The district court must provide a clear explanation of why it has either accepted or rejected the parties' arguments and thereby chosen the particular sentence imposed, regardless of whether it is within or outside of the Guidelines.

*Bolds*, 511 F.3d at 580 (alterations, citations, and internal quotation marks omitted); *accord United States v. Cousins*, 469 F.3d 572, 576-78 (6th Cir. 2006) (concluding that a sentence was procedurally unreasonable due to the district court's failure to provide an adequate explanation for its sentencing determinations), *overruled in part on other grounds by Irizarry v. United States*, 128 S. Ct. 2198, 2202-04 (2008).

The nominal enforcement of the *Bolds* standard has eroded what would otherwise be a clear legal rule. I believe that we should practice what we preach and observe this straightforward mandate. Because the district court in the present case did not offer any explanation for its rejection of Petrus's arguments concerning his family background and immigration status, I believe that the sentence imposed is not procedurally reasonable.

For all of the reasons set forth above, I would vacate Petrus's sentence and remand for resentencing.